# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 1, 2016 Session

## STATE OF TENNESSEE v. ANTONIO HENDERSON and MARVIN DICKERSON

### Appeal from the Criminal Court for Shelby County
### No. 12-05649      Paula L. Skahan, Judge

_____

### No. W2015-00151-CCA-R3-CD  -  Filed June 10, 2016

_____

Following a jury trial, Antonio Henderson ("Defendant Henderson") and Marvin Dickerson ("Defendant Dickerson") (collectively, "the Defendants" or "both Defendants") were each convicted of one count of especially aggravated robbery (Count 1), one count of attempted second degree murder (Count 2), two counts of attempted aggravated robbery (Counts 3 and 4), one count of aggravated assault (Count 5), and one count of employing a firearm during the commission of or attempt to commit a dangerous felony (Count 6).  The trial court imposed partially consecutive sentences for both Defendants and sentenced Defendant Henderson to an effective forty-one years' incarceration and Defendant Dickerson to an effective thirty-seven years' incarceration.  In this consolidated direct appeal, both Defendants claim the evidence was insufficient to support their convictions for each count of the indictment.  As to the conviction of especially aggravated robbery, both Defendants assert that the victim's serious bodily injury had to precede or be contemporaneous with the taking in order to constitute especially aggravated robbery.  Additionally, both Defendants contend the trial court erred in failing to instruct the jury as to certain lesser included offenses and in its instructions as to the elements of unlawful employment of a firearm.  Additionally, Defendant Henderson claims the trial court erred in sustaining the State's objection during Defendant Henderson's closing argument and in sentencing him to serve partially consecutive sentences.  Upon review, we conclude that the trial court committed reversible error when it failed to make any factual findings to support its order that Defendant Henderson's sentence in Count 1 run consecutively to his sentences in Counts 2 and 6, and we reverse and remand the case for resentencing on the alignment of Count 1 with Counts 2 and 6 of Defendant Henderson's sentence.  As to the sufficiency of the evidence concerning the conviction for especially aggravated robbery, we reject the Defendants' argument that a victim must suffer serious bodily injury before or

contemporaneous to the taking of property, and we hold that the evidence was sufficient to support a conviction for especially aggravated robbery because the taking of property was accomplished with a deadly weapon and serious bodily injury was suffered by the victim in connection with the taking. We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed in Part, and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Stephen C. Bush, District Public Defender; Barry W. Kuhn (on appeal) and Jennifer Case (at trial), Assistant District Public Defenders, for the appellant, Antonio Henderson.

Monica A. Timmerman (on appeal) and Henry Gotten (at trial), Memphis, Tennessee, for the appellant, Marvin Dickerson.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Stark and Austin Scofield, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The Shelby County Grand Jury indicted the Defendants with the following charges:

| Count | Charge | Victim |
|-------|--------|--------|
| 1 | Especially Aggravated Robbery | Shabaka Reed |
| 2 | Attempted Second Degree Murder | Shabaka Reed |
| 3 | Attempted Aggravated Robbery | Nathan Cannon |
| 4 | Attempted Aggravated Robbery | Tiffany Fleming |
| 5 | Aggravated Assault | Tiffany Fleming |

| 6 | Unlawful Employment of a Firearm During the Commission of or Attempt to Commit a Dangerous Felony | N/A |
|---|---|---|

Nathan Cannon died from unrelated causes before trial and, therefore, did not testify.

At trial, Shabaka Reed testified that he and Tiffany Fleming had gone to his uncle, Nathan Cannon's, home on the day of the offense. Mr. Cannon was a grave digger and lived in the caretaker's home on the grounds of a cemetery.[1] Mr. Reed and Ms. Fleming played dominoes with Mr. Cannon; Mr. Reed's other uncle, Al Arnette; and a female friend of Ms. Fleming.[2] Mr. Reed and Ms. Fleming left Mr. Cannon's house and drove Mr. Arnette and Ms. Fleming's female friend to another location. Mr. Reed and Ms. Fleming then went to the store to buy beer and a condom, and when they returned to Mr. Cannon's house, Mr. Cannon was not there. Mr. Reed and Ms. Fleming then drove his car to the back of the cemetery parking lot. While they were inside the car, Mr. Cannon knocked on the car window and asked for a cigarette. Mr. Cannon walked away and Mr. Reed got into the driver's seat in order to put his pants back on, and Ms. Fleming got in the front passenger's seat.

At that point, Mr. Reed saw Mr. Cannon "run to the back end of the car." Mr. Cannon jumped into the back seat of Mr. Reed's car and said, "Baka, they got guns." Mr. Reed said Mr. Cannon was scared. Mr. Reed recalled seeing the two men with their shirts covering their faces, one of whom had a "long gun" pointed at Mr. Cannon. Mr. Reed also explained that he did not get a good look at the two men because they had their faces covered, and they instructed the victims not to look at them. The two men ordered everyone to get out of the car and demanded their cell phones, wallets, and keys. After Mr. Reed exited the vehicle and gave the men his wallet, keys, and cell phone, he heard them discussing placing him into the trunk of the car. At that point, Mr. Reed tried to take the gun from one of the men, and a fight ensued. Mr. Reed recalled that he and the gunman were "rolling all on the ground." At one point during the fight, Mr. Reed was able to gain control of the gun, but the gunman took the gun back. The fight continued for a short time after the gunman regained control of the gun, but then the gunman ran away. Mr. Reed tried to follow the gunman but collapsed. At that point, Mr. Reed realized that he had been shot. Mr. Reed did not know at what point during the fight he was shot. Mr. Reed could not see Mr. Cannon or Ms. Fleming when he fell to the ground.

---

[1] The specific cemetery is not identified in the record.
[2] The female friend's name does not appear in the record.

Mr. Reed sustained four gunshot wounds—one wound to his leg, stomach, back, and arm. He underwent surgery, was hospitalized for two weeks, and wore a colostomy bag for five months. Mr. Reed reported that his wallet was later returned to him by the police but that he never recovered his keys, his cell phone, or the money in his wallet. Mr. Reed recalled that both of the men were young, black, and slim. He also recalled that one of the men had tattoos on his forearm. Mr. Reed identified a photo, which showed his pants and his wallet on the ground near the passenger side of his car. Mr. Reed stated that he was scared for his life during this incident.

On cross-examination, Mr. Reed acknowledged that he knew Patricia Henderson, Defendant Henderson's mother, and that Patricia Henderson had previously been to Mr. Cannon's house. Mr. Reed denied any knowledge that Mr. Cannon kept drugs in his house or sold drugs from his house. Mr. Reed admitted that he, Ms. Fleming, and Mr. Cannon were drinking beer while they were playing dominoes at Mr. Cannon's house. Mr. Reed also acknowledged that, in a statement to police, he said, "[M]e and a friend of mine were sitting in my car at my uncle's house when my uncle approached the car with two guys that had guns." However, Mr. Reed explained that the statement was incorrect and that he meant to say he saw his uncle running to the car and that he saw the men with one gun. Mr. Reed admitted that he "possibly" heard one of the men ask Mr. Cannon why he ran, and Mr. Reed remembered that the men asked Mr. Cannon where the money and "dope" were. Mr. Reed acknowledged that he signed the police statement, but he said that he was in the hospital and on pain medication when he spoke with police and signed the statement.

Tiffany Fleming testified that she accompanied Mr. Reed to Mr. Cannon's house around 7:30 or 8:00 p.m. on the night of the offense. While there, they played dominoes and drank beer. Eventually, Mr. Reed and Ms. Fleming left to take Ms. Fleming's female friend and another one of Mr. Reed's uncles to their respective homes. Mr. Reed and Ms. Fleming then got something to eat and went to the store to buy beer and a condom. Mr. Reed then drove back to the cemetery and parked his car in the parking lot. Ms. Fleming agreed that she and Mr. Reed tried to "be intimate" in the car, but she said they were interrupted by Mr. Cannon asking for a cigarette. Mr. Cannon left, but "two or three minutes later" Ms. Fleming saw Mr. Cannon approach the car followed by two men who had shirts wrapped around their heads and "a big gun." Ms. Fleming noted that the gun was pointed at Mr. Cannon and that one of the men opened the rear passenger door of Mr. Reed's car so that Mr. Cannon could enter the car. Ms. Fleming recalled that the two men "kept asking for money and drugs." Mr. Reed and Ms. Fleming told the two men that they did not have any drugs and that they did not sell drugs. After Ms. Fleming and Mr. Reed exited the car, Ms. Fleming heard the two men ask for the keys and "ask[] to open up the trunk[.]" Ms. Fleming recalled thinking, "Lord, I hope I can live to see my kids," because she thought the Defendants were going to force her to get into the trunk.

At that point, Mr. Reed "got in a tussle" with the man holding the gun. The second man, who was on Ms. Fleming's side of the car, went to the other side of the car to the assist his companion in the struggle. At that point, Ms. Fleming "ran for [her] life" to some nearby woods and climbed over a fence, injuring herself. Ms. Fleming heard three or four gunshots while she hid in the woods. She remained hidden in the woods until she saw the lights from the police cars. Ms. Fleming could only recall the two men asking for drugs and money. However, she said she placed her cell phone on the dashboard of the car "[b]ecause [she] was giving [the men] what [she] had." Ms. Fleming stated that she did not see the two men take anything from Mr. Cannon.

Ms. Fleming also said she could not identify the two men because their faces were covered by shirts. However, she later learned that she knew one of them. Ms. Fleming was close friends with Patricia Henderson, and she had known Defendant Henderson since he was ten or eleven years old. The day after the offense, Ms. Fleming visited Ms. Henderson and told her what happened. When she arrived at Ms. Henderson's house, she saw both Defendant Henderson and Defendant Dickerson, and Defendant Dickerson had a cast on his finger. Ms. Fleming asked what happened to Defendant Dickerson's hand, and he responded that he broke his finger. At that time, she did not know that Defendant Henderson and Defendant Dickerson were involved in the offense. Later, Ms. Fleming spoke with Defendant Henderson on the phone, and Defendant Henderson said, "Ms. Tiffany, I'm sorry . . . . I didn't know that was you." Ms. Fleming believed that Defendant Henderson was referencing "this case."

On cross-examination, Ms. Fleming agreed that she had been to Mr. Cannon's home before and that she had seen people smoking marijuana there. Ms. Fleming denied telling police that she heard someone say "what you running for" as Mr. Cannon approached the car, and she stated that the first thing she heard was someone demanding drugs and money. Ms. Fleming confirmed that no one directly asked for her possessions and that she put her phone on the dash on her own accord. No one ever reached into the car to take her phone from the dash. Ms. Fleming also confirmed that the two men did not cause her injuries. She further agreed that she was not certain what Defendant Henderson was apologizing for when she spoke with him on the phone. Ms. Fleming confirmed that she gave a statement to police at the scene, but she noted that she was upset when she gave the statement. Ms. Fleming agreed that her statement to police did not contain any reference to the two men demanding Mr. Reed's keys.

Officer Demar Wells testified that he was a crime scene investigator with the Memphis Police Department ("MPD"). On the night of the offense, Officer Wells collected evidence, took photographs, and made diagrams of the crime scene. Officer Wells found four spent nine-millimeter shell casings a few parking spots away from where Mr. Reed's car was parked. Officer Wells noted that nine-millimeter ammunition

can be fired from a handgun or a long gun. Additionally, Officer Wells found a pair of pants, a used condom wrapper, and a wallet near Mr. Reed's car. On cross-examination, Officer Reed stated that, other than the type of ammunition, he had no information about what type of gun may have been used. Officer Wells also confirmed that he did not collect evidence from inside Mr. Reed's car, so he did not know whether any keys were found inside the car.

MPD Officer Stacy Milligan testified that he processed Mr. Reed's car after it had been transported to the crime scene unit. Officer Milligan tested both the inside and outside of the vehicle for fingerprints and found three "viable" prints. He then sent those prints to be examined. Officer Milligan also stated that he found two cell phones inside Mr. Reed's car.

James Hill testified that he examined the prints found during the search of Mr. Reed's car. He identified one of the prints as belonging to Defendant Dickerson. The identified print was taken from the top of the hood on the driver's side of Mr. Reed's car.

MPD Officer Benjamin Huff testified that he responded to a call about a gunshot victim at Methodist South Hospital. When Officer Huff arrived, he discovered that Defendant Dickerson had been shot in the hand. Defendant Dickerson told police that "he was walking out of the Summit Park Apartments . . . and he said somebody drove by and shot him in the hand." Officer Huff went to Summit Park Apartments to investigate Defendant Dickerson's claim, but he was unable to locate any shell casings or any evidence that a shooting had occurred at that location. On cross-examination, Officer Huff agreed that it was possible that a shooting could take place without shell casings being left behind.

Kimberly Spight testified that she was preparing to go to sleep on the night of the offense when she received a call from her neighbor, Angela Boles. Ms. Boles asked Ms. Spight if she "want[ed] to make some gas money." Ms. Spight said yes and went to her car where Ms. Boles, Defendant Dickerson, and Defendant Henderson were waiting. They asked Ms. Spight to open the trunk, and Ms. Spight saw the Defendants place something into the trunk. Ms. Spight gave the keys to Ms. Boles because Ms. Spight did not have a license and her taillight was not working. Ms. Spight rode in the front passenger seat, and the Defendants rode in the back seat. Ms. Boles first drove to a gas station to allow Ms. Spight to buy a drink and a snack. Then Ms. Boles drove to an area near a truck stop and train tracks. The Defendants exited the car, retrieved something from the trunk, and "went through [a] little cut." Ms. Boles then drove the car back and forth in the area where they had dropped off the Defendants. During the third or fourth pass, Ms. Spight heard gunshots and asked, "[W]hat the f— is going on?" Ms. Boles then drove back to where she had dropped off the Defendants, and the Defendants came back to the car. Ms. Spight noticed that Defendant Dickerson's finger "was bleeding and

it was hanging off . . . by a piece of meat." Defendant Dickerson said he wanted to go to a hospital, and Defendant Henderson said, "I made a mistake and shot my n—." Ms. Spight recalled that everyone in the car seemed "shooken [sic] up and nervous."

Ms. Boles then drove to Kingsgate Apartments, and Defendant Henderson exited the car with a gun. Ms. Spight did not know there was a gun in the car until she saw Defendant Henderson exit the car. Ms. Spight recalled that the gun was not a handgun or pistol but, instead, "looked like a machine gun[.]" After Defendant Henderson left the car, Ms. Boles drove Defendant Dickerson to the hospital. When they arrived, Ms. Boles walked Defendant Dickerson into the hospital while Ms. Spight parked the car. Ms. Spight got out of the car to walk into the hospital, but Ms. Boles came outside and said that they were not going to stay.

Ms. Spight drove away from the hospital because Ms. Boles "was acting like she was shook [sic] up." As they were driving, Ms. Boles threw a cell phone out of the car window. Ms. Spight was pulled over by a policeman, and she informed the officer that she had just taken a man to the hospital "whose finger got shot off." The officer wrote Ms. Spight a ticket for driving without a license and "the tags." Sometime later, police transported Ms. Spight to the police station. There, Ms. Spight gave a statement about what she observed on the night of the offense. She also viewed photograph lineups and identified Defendant Henderson and Defendant Dickerson as the people in her car on the night of the offense.

On cross-examination, Ms. Spight said she did not hear anyone planning a robbery while they drove, and no one asked her to participate in a robbery. Further, she denied seeing the Defendants carrying any shirts or having shirts wrapped around their heads when they exited the car. However, Ms. Spight noted, "I didn't look at them like that. I just know they was [sic] in the back seat[,] and they was [sic] getting out of the car." Ms. Spight also did not recall anything being wrapped around the Defendants' heads when they returned to the car. Ms. Spight noted that there was no discussion of a robbery after the Defendants got back into the car. Ms. Spight agreed that in her statement to police, she said that Ms. Boles threw "something" out of the car window but that she did not say it was a cell phone.

The State played two recorded jail phone calls of conversations between Defendant Henderson and two females. In the first phone call, one female told Defendant Henderson that she was going to "call him today." She also mentioned that the person she was going to call was in the hospital. In a second phone call, Defendant Henderson told another female that he was "on [Mr. Reed's] side" of the car. The State also played four recorded jail phone calls made by Defendant Dickerson. In the first call, Defendant Dickerson tells a male that he "was lying" both when he told someone that he was shot by someone in a black car and that he shot himself. In the same phone call, Defendant

Dickerson said, "I did do it." In the second phone call Defendant Dickerson discussed his charges with a female, and he opined that "Angie" would be turned into a witness if she "snitched." In the third call, a male caller commented that something was "all over the news," and Defendant Dickerson responded, "What we did?" The fourth phone call was unintelligible.[3]

The Defendants were convicted as charged on all six counts. Count 5 (aggravated assault of Ms. Fleming) was merged with Count 4 (attempted aggravated robbery of Ms. Fleming). Following a sentencing hearing, the trial court imposed partially consecutive sentences for both Defendants and sentenced Defendant Henderson to an effective forty-one years' incarceration and Defendant Dickerson to an effective thirty-seven years' incarceration. This timely appeal followed.

## II. ANALYSIS

### Sufficiency of the Evidence

Both Defendants argue that the evidence was insufficient to sustain their convictions for especially aggravated robbery in Count 1. Defendant Henderson also argues that the evidence was insufficient to support his convictions for the remaining counts. Although Defendant Dickerson's statement of the issues alleges that there was insufficient evidence to support his convictions for all counts in the indictment, the body of his brief only argues that there was insufficient evidence to support his conviction in Count 1. Consequently, Defendant Dickerson's claim that the evidence was insufficient to support his convictions in Counts 2-6 is subject to waiver. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). However, because the same facts underlie both Defendants' convictions, we will address the merits of Defendant Dickerson's claim that the evidence was insufficient to support his convictions for all counts in the indictment.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the

---

[3] The audio recordings that are included in the record are very difficult to understand. The jury was provided an unofficial transcript of the recordings, but those transcripts were not admitted into evidence and are not included in the record on appeal.

conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

*Defendant Henderson's Convictions*

a. Especially Aggravated Robbery (Count 1)

Theft occurs when someone knowingly takes the property of another without the owner's consent and with the intent to deprive the owner of the property. Tenn. Code Ann. § 39-14-103(a) (2010). "Robbery is the intentional or knowing theft of property from the person of another *by* violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2010) (emphasis added). "Especially aggravated robbery is robbery . . . *[a]ccomplished* with a deadly weapon; and . . . [w]here the victim *suffers* serious bodily injury." Tenn. Code Ann. § 39-13-403(a) (2010). (emphasis added).

Defendant Henderson argues that the evidence was insufficient to sustain his conviction for especially aggravated robbery in Count 1 because the taking of Mr. Reed's property was complete before Mr. Reed was shot. He relies on State v. Swift, 308 S.W.3d 827 (Tenn. 2010), and State v. Owens, 20 S.W.3d 634 (Tenn. 2000), to argue that the victim's serious bodily injury must occur contemporaneous to or precede the taking in order to constitute especially aggravated robbery.[4]

We disagree with the Defendant's argument that serious bodily injury must precede or be contemporaneous to the taking of property. As this court stated in State v. Antonio Jamarc Warfield:

Appellant argues that his conviction for especially aggravated robbery cannot stand "[b]ecause the victim's serious bodily injury did not precede

---

[4] The State argues that the facts of this case are distinguishable from Swift and Owens because the theft from Mr. Reed had not yet been completed. Although we agree that the jury could have reasonably determined that the taking of property from Mr. Reed was not complete, such a determination was not necessary to sustain the conviction because the serious bodily injury suffered by the victim was directly connected to the taking of Mr. Reed's property.

- 9 -

or occur contemporaneously with the aggravated robbery." In support, appellant cites our supreme court's holding in State v. Owens, 20 S.W.3d 634, 641 (Tenn.2000), that "that the use of violence or fear must precede or be contemporaneous with the taking of property from the person to constitute the offense of robbery under Tenn. Code Ann. § 39–13–401." However, appellant's reliance on Owens is misguided. The court in Owens addressed "how closely connected in time must the taking and the *violence* [or *fear* ] be" in order for a theft to constitute a robbery. Owens, 20 S.W.3d at 637 (emphasis added). The holding in Owens did not state that the *bodily injury* suffered by the victim must be contemporaneous with the taking of property, only that the *use of violence or fear* must precede or be contemporaneous with the taking of property.

State v. Antonio Jamarc Warfield, No. M2011-01235-CCA-R3-CD, 2012 WL 4841546, at *12 (Tenn. Crim. App. Oct. 5, 2012).

Swift, like Owens, was a robbery case in which our supreme court held "that the temporal proximity between the taking of property and the use of violence or fear is the sole relevant factor" to distinguish theft from robbery. Swift, 308 S.W.3d at 828. As was the case with the defendant in Antonio Jamarc Warfield, the Defendants' reliance on Swift and Owens to support the argument that serious bodily injury must precede or be contemporaneous to the taking is "misguided." Id.

We hold that the serious bodily injury suffered by the victim can precede, be contemporaneous with, or occur subsequent to but in connection with the taking of property of another. Antonio Jamarc Warfield, 2012 WL 4841546, at *12. In this case, the evidence was more than sufficient to prove beyond a reasonable doubt that Mr. Reed's property was taken, that the taking was accomplished with a deadly weapon, and that Mr. Reed suffered serious bodily injury in connection with the taking. Therefore, the evidence supports Defendant Henderson's conviction for especially aggravated robbery.

### b. Attempted Second Degree Murder (Count 2)

Defendant Henderson argues that the evidence was insufficient to support his conviction for attempted second degree murder because there was no proof that Defendant Henderson intended to shoot Mr. Reed. He asserts that the gun may have been fired accidentally when Defendant Henderson and Mr. Reed were struggling over control of the gun. The State argues that there was sufficient evidence to support Defendant Henderson's conviction because the testimony showed that Defendant Henderson regained control of the gun during the fight and that Mr. Reed was shot four times. We agree with the State.

As charged in the indictment, second degree murder is "[a] knowing killing of another[.]" Tenn. Code Ann. § 39-13-210(a)(1) (2010). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(a)(20) (2010). As instructed to the jury, attempt is defined as:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(3) (2010). Therefore, to convict Defendant Henderson of attempted second degree murder, the State had to prove that Defendant Henderson acted with the intent to cause the knowing killing of another and that his actions constituted a substantial step toward that goal. See State v. Inlow, 52 S.W.3d 101, 104 (Tenn. Crim. App. 2000). Intent can seldom be proven by direct evidence, but it "may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence." Id. at 105 (citing State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993)).

The evidence showed that the Defendants approached Mr. Reed's car, ordered Mr. Reed to exit the car, and demanded money and drugs as well as Mr. Reed's cell phone, keys, and wallet. After Mr. Reed handed over his possessions, he overheard the Defendants' discussing locking him in the trunk. At that point, Mr. Reed attempted to gain control of the gun, and a struggle ensued. As noted above, Defendant Henderson admitted that he was standing on Mr. Reed's side of the car, and there was sufficient evidence for the jury to conclude that Defendant Henderson was holding the gun. Further, Defendant Henderson appears to concede in his brief that he engaged in a struggle with Mr. Reed for the gun. During the struggle, Mr. Reed was shot in the leg, arm, stomach, and back. Moreover, witnesses described the weapon as a "long gun." Based on the location of Mr. Reed's injuries—especially the gunshot wound to his back—the jury could infer that Defendant Henderson was the person who fired the gun and that Mr. Reed did not shoot himself. Further, based on the character of and the circumstances surrounding the offense, specifically the number of times Mr. Reed was shot, the jury could conclude that the gun was not fired accidentally but that Defendant Henderson knowingly shot Mr. Reed. The evidence was sufficient to support Defendant Henderson's conviction for attempted second degree murder.

### c. Attempted Aggravated Robbery (Counts 3 and 4)

Defendant Henderson argues that there was insufficient evidence to support his convictions for "aggravated robbery" in Counts 3 and 4 because there was no evidence that any property was taken from Mr. Cannon or Ms. Fleming by use of violence or by putting them in fear with the use of a deadly weapon. However, we note that Defendant Henderson was convicted of *attempted* aggravated robbery, and not aggravated robbery, as his brief asserts.

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2010). As charged in Counts 3 and 4, aggravated robbery is a robbery that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-402(a)(1) (2010). As instructed to the jury, criminal attempt is defined as follows:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(3) (2010).

In this case, the jury could conclude beyond a reasonable doubt that, by pointing a gun at Mr. Cannon and demanding all the victims' cell phones, keys, and wallets, Defendant Henderson took a substantial step toward taking property from Mr. Cannon and Ms. Fleming by violence or putting Mr. Cannon and Ms. Fleming in fear and that the Defendant did so by the display of a deadly weapon. The evidence was sufficient to support Defendant Henderson's convictions in Count 3 and Count 4.

### d. Aggravated Assault (Count 5)

Defendant Henderson argues that the evidence was insufficient to support his conviction of the aggravated assault of Ms. Fleming because there was no evidence that the gun was ever pointed at Ms. Fleming. The State argues that the evidence was sufficient because Defendant Henderson brandished a gun and Ms. Fleming testified that she was afraid.

As charged in the indictment, "[a] person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]" Tenn. Code

- 12 -

Ann. § 39-13-101(a)(2) (2010).  As relevant to this case, an assault is aggravated if it "[i]nvolved the use or display of a deadly weapon[.]"  Tenn. Code Ann. 39-13-102(a)(1)(A)(ii) (Supp. 2012).

Defendant Henderson's argument that there was insufficient evidence to support his conviction for aggravated assault because the weapon was never pointed at Ms. Fleming is without merit.  Under the language of the statute, an assault can be aggravated merely by the *display* of a deadly weapon.  The weapon does not have to be aimed at any particular individual.  See id.  As noted above, there was sufficient evidence for the jury to conclude that Defendant Henderson was holding the gun and that the gun was clearly visible to Ms. Fleming.  The evidence was sufficient for the jury to conclude that Defendant Henderson intentionally or knowingly caused Ms. Fleming to reasonably fear imminent bodily injury and that he did so by use or display of a deadly weapon.

### e. Unlawful Employment of a Firearm During the Commission of or Attempt to Commit a Dangerous Felony (Count 6)

Defendant Henderson next argues that the evidence was insufficient to support his conviction for unlawful employment of a firearm during the commission of or attempt to commit a dangerous felony because there was insufficient evidence to convict him of the predicate offense—attempted second degree murder.  The State argues that there was sufficient evidence to support this conviction because there was sufficient evidence to support Defendant Henderson's conviction of attempted second degree murder.

It is an offense to employ a firearm during the commission of or attempt to commit a dangerous felony.  Tenn. Code Ann. § 39-17-1324(b)(1)-(2) (Supp. 2012).  Attempted second degree murder and voluntary manslaughter are defined as a "dangerous felony" for the purposes of this offense.  Tenn. Code Ann. § 39-17-1324(i)(1)(B)-(C) (Supp. 2012).

We have already determined that the evidence was sufficient to support Defendant Henderson's conviction for attempted second degree murder and that the Defendants used a gun during the commission of the offense.  As noted above, there was sufficient evidence for the jury to conclude that Defendant Henderson was the person holding the gun.  Therefore, there was sufficient evidence to support Defendant Henderson's conviction for unlawful employment of a firearm during the commission of or attempt to commit a dangerous felony.

*Defendant Dickerson's Convictions*

During closing arguments, the State asserted that Defendant Henderson had possession of the gun during the commission of the offenses and that Defendant

Dickerson was criminally responsible for Defendant Henderson's actions. "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both. . . . Each party to an offense may be charged with commission of the offense." Tenn. Code Ann. § 39-11-401 (2010). As charged in this case, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2) (2010). Additionally, our supreme court has stated:

> [T]he statute makes a defendant criminally liable for the acts of confederates that are the natural and probable consequence of the crime in which the defendant participated. Extending criminal liability to secondary actors is reasonable as long as the crimes committed by others were the foreseeable result of the consummation of the intended crime. Thus, the statute may apply despite the fact that the criminal conduct of others differs from or exceeds the scope of the target crime.

State v. Richmond, 90 S.W.3d 648, 655 (Tenn. 2002).

In order to convict a defendant under the theory of criminal responsibility, the State must prove beyond a reasonable doubt and the jury must find: "(1) the elements of the crime or crimes that accompanied the target crime; (2) the defendant was criminally responsible pursuant to Tennessee Code Annotated section 39-11-402; and, (3) that the other crimes that were committed were the natural and probable consequences of the target crime." Id. at 656 (quoting State v. Howard, 30 S.W.3d 271, 276 (Tenn. 2000)) (internal quotation marks omitted). Whether an offense is the natural and probable consequence of a target crime is a question for the jury, and the trial court must instruct the jury on the natural and probable consequences rule. Id. at 656-57. In this case, the trial court instructed the jury on criminal responsibility and the natural and probable consequences rule.

### a. Especially Aggravated Robbery (Count 1) and Attempted Second Degree Murder (Count 2)

Initially, we note that Defendant Dickerson also argues that the evidence was insufficient to sustain his conviction for especially aggravated robbery because the taking was complete before Mr. Reed was shot. There was sufficient evidence to show that Mr. Reed's property was taken, that the taking was accomplished with a deadly weapon, and that Mr. Reed suffered serious bodily injury in connection to the robbery. Additionally, Defendant Dickerson asserts that "while Mr. Reed certainly sustained bodily injury, it is

unclear whether he actually had any property taken from him." As we have already stated, the evidence in this case clearly showed that property was taken from Mr. Reed. Mr. Reed gave his wallet, keys, and cell phone to the robbers. The only item he recovered was his wallet, but the money that was inside of the wallet was missing.

As noted above, the evidence was sufficient for the jury to conclude that Defendant Henderson was carrying the gun and standing on Mr. Reed's side of the car. Further, Ms. Fleming testified that the second man was standing on her side of the car but that he went to the other side of the car to assist his companion when Mr. Reed attempted to gain control over the gun. After the shooting, the Defendants fled the scene together and got into the same getaway car. The evidence was sufficient for the jury to conclude that Defendant Dickerson acted with the intent to promote or assist Defendant Henderson in the commission of especially aggravated robbery.

Similarly, the jury could conclude that attempted second degree murder was a natural and probable consequence of the target offense. The Defendants brought a loaded weapon to a planned robbery and openly discussed placing Mr. Reed in the trunk of the car. The jury could conclude that Mr. Reed's attempts to take control of the gun and the shooting of Mr. Reed were a natural and probable consequence of the Defendants' actions. The evidence was sufficient to support Defendant Dickerson's convictions for especially aggravated robbery and attempted second degree murder in Counts 1 and 2.

### b. Attempted Aggravated Robbery (Counts 3 and 4)

The elements of attempted aggravated robbery and aggravated assault are set forth above. See Tenn. Code Ann. § 39-13-401(a) (2010) (robbery); Tenn. Code Ann. § 39-13-402(a)(1) (2010) (aggravated robbery); Tenn. Code Ann. § 39-12-101(a)(3) (2010) (criminal attempt). We have already concluded that there was sufficient evidence to support Defendant Henderson's conviction for attempted aggravated robbery because he took a substantial step toward completing that robbery by demanding property from all three victims, the victims were placed in fear, and that Defendant Henderson used or displayed a deadly weapon in the commission of the offense. We further conclude that the evidence was sufficient for the jury to conclude that Defendant Dickerson acted with the intent to promote or assist the commission of the attempted aggravated robbery of Mr. Cannon and Ms. Fleming. The evidence showed that Defendant Dickerson and Defendant Henderson approached Mr. Reed's car with a gun and stood on each side of the car. The gun was pointed at Mr. Cannon as he got into the car, and it was visible to both Mr. Reed and Ms. Fleming. Property was demanded of all the victims, and Ms. Fleming placed her cell phone onto the car's dashboard "[b]ecause [she] was giving [the men] what [she] had." After Mr. Reed was shot, both Defendants fled the scene together. Therefore, the evidence was sufficient to support Defendant Dickerson's convictions for attempted aggravated robbery in Counts 3 and 4.

- 15 -

### c. Aggravated Assault (Count 5)

The elements of aggravated assault are set forth above. Tenn. Code Ann. § 39-1-101(a)(2) (2010) (assault); Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii) (2010) (aggravated assault). As noted above, there was sufficient evidence for the jury to conclude that Defendant Henderson was holding the gun, and the gun was clearly visible to Ms. Fleming, who was in fear for her safety. We have already concluded that the evidence was sufficient to support Defendant Henderson's convictions for aggravated assault. The jury could reasonably conclude that Defendant Dickerson acted with the intent to promote or assist in the commission of aggravated assault. See Tenn. Code Ann. § 39-11-402(2) (2010). Therefore, the evidence was sufficient to support Defendant Dickerson's conviction for aggravated assault.

### d. Unlawful Employment of a Firearm During the Commission of a Dangerous Felony (Count 6)

It is an offense to employ a firearm during the commission of or attempt to commit a dangerous felony. Tenn. Code Ann. § 39-17-1324(b)(1)-(2) (Supp. 2012). Attempted second degree murder and voluntary manslaughter are defined as dangerous felonies for the purposes of this offense. Tenn. Code Ann. § 39-17-1324(i)(1)(B)-(C) (Supp. 2012). The evidence showed that both Defendants placed a firearm in the back of Ms. Spight's car and that they used the firearm in order to take property from the victims. As noted above, the evidence was sufficient for the jury to conclude that attempted second degree murder was a natural and probable consequence of the intended aggravated robbery. Therefore, the evidence was sufficient to support Defendant Dickerson's conviction for unlawful employment of a firearm during the commission of attempted second degree murder under the theory of criminal responsibility.

## **Failure to Charge Lesser Included Offenses in Count 1**

Prior to trial, both Defendants submitted written requests that the trial court instruct the jury as to the elements of attempted especially aggravated robbery and attempted aggravated robbery as lesser included offenses of especially aggravated robbery in Count 1. The trial court denied the Defendants' requests because the proof indicated that there was a completed taking from Mr. Reed.

On appeal, both Defendants argue that the trial court should have instructed the jury as to the requested lesser included offenses and attempted robbery as lesser included offenses of especially aggravated robbery in Count 1. The Defendants assert that, because Mr. Reed's wallet was found on the ground near his car, the jury could have concluded that his wallet merely fell to the ground when he exited the car and that the Defendants never took it. Further, the Defendants argue that the jury could have

- 16 -

concluded that the Defendants did not take Mr. Reed's cell phone because two cell phones were found inside Mr. Reed's car. In short, the Defendants argue that the jury could have concluded that "an actual taking never occurred." The State argues that the trial court properly concluded that the evidence established that the Defendants completed a robbery of Mr. Reed and properly denied the Defendants' request for an instruction as to the requested lesser included offenses.

a. Attempted Especially Aggravated Robbery and
Attempted Aggravated Robbery

Whether the trial court should have instructed the jury on a lesser included offense is a mixed question of law and fact, which we review de novo with no presumption of correctness. State v. Banks, 271 S.W.3d 90, 124 (Tenn. 2008) (citing State v. Hatfield, 130 S.W.3d 40, 41 (Tenn. 2004); Carpenter v. State, 126 S.W.3d 879, 892 (Tenn. 2004)). When addressing issues related to failure to charge lesser included offenses, appellate courts consider three questions: "(1) whether the offense is a lesser[-]included offense; (2) whether the evidence supports a lesser[-]included offense instruction; and (3) whether the failure to give the instruction is harmless error." Id. (citing State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002)).

Pursuant to Tennessee Code Annotated section 40-18-110(f), an offense is a lesser included offense if:

> (1) All of its statutory elements are included within the statutory elements of the offense charged;
>
> (2) The offense is facilitation of the offense charged or of an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1);
>
> (3) The offense is an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1); or
>
> (4) The offense is solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1).

Tenn. Code Ann. § 40-18-110(f) (2012).

If "a lesser offense is included in the charged offense, the question remains whether the evidence justifies a jury instruction on such lesser offense." State v. Burns, 6

S.W.3d 453, 467 (Tenn. 1999). Tennessee Code Annotated section 40-18-110(a) (2012) provides:

> When requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included offense of the offense charged in the indictment or presentment. However, the trial judge shall not instruct the jury as to any lesser included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

Generally, evidence that is sufficient to support an instruction on the greater offense will also support an instruction on the lesser included offense under Tennessee Code Annotated section 40-18-110(f)(1). Banks, 271 S.W.3d at 125. However, instructions on the lesser included offenses of attempt, solicitation, or facilitation are unnecessary "where the evidence clearly establishes completion of the criminal act or simply does not involve proof of solicitation or facilitation." Id. (citing State v. Wilson, 211 S.W.3d 714, 721 n.2 (Tenn. 2007); State v. Robinson, 146 S.W.3d 469, 487 n.7 (Tenn. 2004)).

In this case, attempted especially aggravated robbery is a lesser included offense of especially aggravated robbery pursuant to Tennessee Code Annotated section 40-18-110(f)(3). Further, aggravated robbery is a lesser included offense of especially aggravated robbery because all of its elements are included within the elements of especially aggravated robbery. See Tenn. Code Ann. § 40-18-110(f)(1); see also Tenn. Code Ann. § 39-13-403 (2010) (especially aggravated robbery is robbery accomplished with a deadly weapon *and* where the victim suffers serious bodily injury); Tenn. Code Ann. § 39-13-402 (2010) (aggravated robbery is robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon *or* where the victim suffers serious bodily injury). Therefore, attempted aggravated robbery is a lesser included offense of especially aggravated robbery. See Tenn. Code Ann. § 40-18-110(f)(3) ("The offense is an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1)[.]").

We next turn to "whether the evidence supports a lesser included offense instruction[.]" Banks, 271 S.W.3d at 124. In this case, Mr. Reed testified that the Defendants approached the car with a gun and ordered him out of the car. They then

demanded Mr. Reed's wallet, keys, and cell phone, and Mr. Reed gave them the requested items. The only item that was returned to Mr. Reed was his wallet, but the money that was inside the wallet was missing. As to the Defendants' argument that the jury could have concluded that one of the cell phones found inside the car belonged to Mr. Reed, Mr. Reed clearly testified that he handed over his cell phone to one of the Defendants and that it was never returned to him. Therefore, the evidence clearly established that there was a completed taking from Mr. Reed in Count 1. The trial court did not err when it declined to instructed the jury on the lesser included offenses of attempted especially aggravated robbery and attempted aggravated robbery. The Defendants are not entitled to relief on this issue.

### b. Attempted Robbery

The Defendants also argue that the trial court should have instructed the jury as to the elements of attempted robbery as a lesser included offense in Count 1. However, we note that nothing in the record indicates that the Defendants requested in writing that the trial court instruct the jury as to the elements of attempted robbery as a lesser included offense in Count 1. Tennessee Code Annotated section 40-18-110(c) states:

> Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, the lesser included offense instruction is waived. Absent a written request, the failure of the trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

However, defendants have a constitutional right to a correct and complete charge of the law. State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006) (citing State v. Teel, 793 S.W.2d 263, 249 (Tenn. 1990)). Therefore, erroneous or inaccurate jury instructions may be cited as error for the first time on appeal, but "a trial court's incomplete jury charge may be cited as error on appeal only if the defendant requested a lesser included offense charge at trial." Id. (citing State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005)). Nevertheless, even if the issue is waived, this court may still consider allegations of incomplete jury instructions under plain error review. State v. Fayne, 451 S.W.3d 362, 371 (Tenn. 2014).

Because the Defendants failed to submit a written request for an instruction for attempted robbery, their argument about the failure to charge that offense is waived on appeal. See Tenn. Code Ann. § 40-18-110(c); Fayne, 451 S.W.3d at 371. Additionally, we decline to review the matter for plain error because, as noted above, the proof clearly shows that there was a completed taking in this case. See Banks, 271 S.W.3d at 125.

- 19 -

## Failure to Instruct Jury on Elements of Reckless Aggravated Assault

Prior to trial, the Defendants submitted written requests that the trial court charge reckless aggravated assault as a lesser included offense of especially aggravated robbery (Count 1) and attempted aggravated robbery (Counts 3 and 4). At the beginning of the jury instructions, the trial court informed the jury that reckless aggravated assault was a lesser included offense of especially aggravated robbery (Count 1), attempted aggravated robbery (Counts 3 and 4), and aggravated assault (Count 5). Reckless aggravated assault was also listed as a lesser included offense in the instructions for the verdict forms for Counts 3, 4, and 5. However, the trial court failed to define the elements of reckless aggravated assault in the jury instructions. On appeal, the Defendants assert that the trial court erred when it failed to define the elements of reckless aggravated assault as a lesser included offense of especially aggravated robbery, attempted aggravated robbery, and aggravated assault.

Initially, we note that neither of the Defendants submitted a written request that the trial court charge reckless aggravated assault as a lesser included offense of aggravated assault in Count 5. "Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal." Tenn. Code Ann. § 40-18-110(c) (2012). Because the Defendants failed to submit a written request, they have waived our consideration of whether the trial court should have charged reckless aggravated assault as a lesser included offense of assault in Count 5. However, we may still review the failure to charge such lesser included offense for plain error. Fayne, 451 S.W.3d at 371. Therefore, we will first address whether the trial court erred in failing to define the elements of reckless aggravated assault as a lesser included offense of especially aggravated robbery and attempted aggravated robbery in Counts 1, 3, and 4. We will then consider whether the Defendants are entitled to plain error relief for the trial court's failure to define the elements of reckless aggravated assault as a lesser included offense of aggravate assault in Count 5.

*Charged as a Lesser Included Offense of Especially Aggravated Robbery and Attempted Aggravated Robbery (Counts 1, 3, and 4)*

As stated above, whether the trial court should have instructed the jury on a lesser included offense is a mixed question of law and fact, which we review de novo with no presumption of correctness. Banks, 271 S.W.3d at 124 (citing Hatfield, 130 S.W.3d at 41; Carpenter, 126 S.W.3d at 892). When addressing issues related to failure to charge lesser included offenses, appellate courts consider three questions: "(1) whether the offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether the failure to give the instruction is harmless error."

Id. (citing Allen, 69 S.W.3d at 187). "[I]f the purported lesser-included offense is not actually a lesser-included offense, then the court's inquiry ends." Id. at 125.

As applicable to this issue, reckless aggravated assault is a lesser included offense of the charged offenses if "[a]ll of its statutory elements are included within the statutory elements of the offense charged[.]" Tenn. Code Ann. § 40-18-10(f)(1) (2012). At the time of offense in this case, a person committed reckless aggravated assault when he or she "[r]ecklessly commit[ted] an assault as defined in § 39-13-102(a)(1), and: (i) [c]ause[d] serious bodily injury to another; or (ii) [u]se[d] or display[ed] a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(B) (Supp. 2012). A person commits assault under section 39-13-101(a)(1) if he or she "[i]ntentionally, knowingly, or recklessly causes bodily injury to another." Therefore, "by the plain language defining the offense, reckless aggravated assault requires bodily injury." State v. Goodwin, 143 S.W.3d 771, 776 (Tenn. 2004).

### a. Especially Aggravated Robbery (Count 1)

"Especially aggravated robbery is robbery as defined in § 39-13-401: (1) [a]ccomplished with a deadly weapon; and (2) [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-403(a) (2010). As defined in section 39-13-401, "[r]obbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2010). This court has previously stated that both reckless aggravated assault and knowing or intentional aggravated assault are lesser included offenses of especially aggravated robbery because all of the elements of aggravated assault are included in the definition of especially aggravated robbery. State v. Donald Clark, No. W2011-01549-CCA-R3-CD, 2003 WL 21339272, at *4 (Tenn. Crim. App. May 15, 2003), perm. app. denied (Tenn. Oct. 27, 2003).

Further, both Defendants argued during closing arguments that it was possible that Mr. Reed was shot by accident during the struggle for the gun. If the Defendants' theory was believed, then the shooting was, at most, reckless. Therefore, the trial court erred by failing to define the elements of reckless aggravated assault as a lesser included offense to especially aggravated robbery in Count 1. See id.

### b. Attempted Aggravated Robbery (Counts 3 and 4)

As a preliminary matter, we note that Defendant Dickerson fails to include in his brief any argument that the trial court erred in failing to define the elements of reckless aggravated assault as a lesser included offense of attempted aggravated robbery (Counts 3 and 4). Therefore, his claim as to Counts 3 and 4 is waived. See Tenn. Ct. Crim. App. R. 10(b). However, because the analysis is identical for both Defendants, we will consider,

in addition to the arguments presented in Defendant Dickerson's brief, the merits of his assertion that the trial court should have defined the elements of reckless aggravated assault as a lesser included offense in Counts 3 and 4. <u>See</u> Tenn. R. App. P. 36(b).

As charged in Counts 3 and 4, aggravated robbery "is robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display or any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-402(a)(1) (2010). Tennessee Code Annotated section 39-13-401 defines robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." As instructed to the jury, attempt is defined as:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(3) (2010).

Under the plain language of the offense as charged in Counts 3 and 4, attempted aggravated robbery *does not* include bodily injury. As noted above, reckless aggravated assault requires bodily injury. <u>Goodwin</u>, 143 S.W.3d at 776. Therefore, all of the statutory elements of reckless aggravated assault are not included within the statutory elements of attempted aggravated robbery as charged in this case. Consequently, reckless aggravated assault is not a lesser included offense of attempted aggravated robbery as charged in this case. <u>See</u> Tenn. Code Ann. § 40-18-10(f)(1) (2012). The trial court did not err by not defining the elements of reckless aggravated assault as a lesser included offense of attempted aggravated robbery in Counts 3 and 4. However, informing the jury that reckless aggravated assault was a lesser included offense in Counts 3 and 4 and listing it as a possible lesser included offense in the instruction for filling out the verdict forms in Counts 3 and 4 was error.

### c. Harmless Error

We must next determine whether the trial court's errors were harmless. <u>Williams</u>, 977 S.W.2d at 105. As stated above, if the jury convicts a defendant of the highest charged offense, to the exclusion of the immediately lesser offense, "the jury necessarily rejected all other lesser offenses[.]" <u>Williams</u>, 977 S.W.2d at 106. In such cases, the omission of an instruction for a lesser included offense is harmless beyond a reasonable

- 22 -

doubt. <u>Rashe Moore v. State</u>, 2016 WL 1043121, at *7 (citing <u>Williams</u>, 977 S.W.2d at 106).

In this case, the jury convicted the Defendants as charged in Counts 1, 3 and 4. Therefore, by convicting the Defendants as charged, to the exclusion of the immediately lesser offense, the jury rejected all lesser included offenses, including reckless aggravated assault. Consequently, the trial court's errors with regard to its instructing reckless aggravated assault as a lesser included offense in Counts 1, 3, and 4 were harmless beyond a reasonable doubt. <u>See</u> <u>id.</u> at *7; <u>Williams</u>, 977 S.W.2d at 106.. The Defendants are not entitled to relief.

*Charged as a Lesser Included Offense of Aggravated Assault (Count 5)*

As we noted above, we may review this issue for plain error. <u>Fayne</u>, 451 S.W.3d at 371. Plain error relief will only be granted when all of the following criteria are met:

> (a) the record must clearly establish what occurred at trial; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

<u>Fayne</u>, 451 S.W.3d at 371-72. In order to be entitled to plain error relief, all five factors must be established, and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." <u>Smith</u>, 24 S.W.3d at 283. Further, "'the plain error must [have been] of such a great magnitude that it probably changed the outcome of the trial.'" <u>Id.</u> (quoting <u>State v. Adkisson</u>, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). The defendant bears the burden of persuading the appellate court that the trial court committed plain error. <u>State v. Bledsoe</u>, 226 S.W.3d 349, 355 (Tenn. 2007).

In this case, the Defendants have failed to show that consideration of this issue is "necessary to do substantial justice." The Defendants were convicted of the charged offense in Count 5. By convicting the Defendants of the charged offense, the jury necessarily rejected all lesser included offenses, including reckless aggravated assault. <u>See</u> <u>Rashe Moore</u>, 2016 WL 1043121, at *7; <u>Williams</u>, 977 S.W.2d at 106.. Therefore, plain error relief is not necessary to do substantial justice. <u>See</u>

## **Failure to Instruct Jury on the Elements of Attempted Facilitation of Robbery**

The Defendants next argue that the trial court erred when it failed to define the elements for attempted facilitation of robbery as a lesser included offense of attempted

aggravated robbery in Counts 3 and 4. The State argues that, because the trial court defined criminal responsibility, criminal attempt, facilitation of a felony, and robbery at different points in the jury instructions, it necessarily defined the elements of attempted facilitation of robbery.

As a preliminary matter, we note that the Defendants have waived our consideration of this issue because they did not submit a written request that attempted facilitation of aggravated robbery be charged as a lesser included offense in Counts 3 and 4. See Tenn. Code Ann. § 40-18-110(c) (2012). However, we may still consider their claim under plain error review. Fayne, 451 S.W.3d at 371. The standard for plain error review is set forth above.

The Defendants are not entitled to plain error relief in this case because consideration of this issue is not "necessary to do substantial justice." The Defendants were convicted of the charged offense in Counts 3 and 4, "to the exclusion of the immediately lesser offense." See Williams, 977 S.W.2d at 106. By convicting the Defendants of the charged offense, the jury necessarily rejected all lesser included offenses, including attempted facilitation of aggravated robbery. See Rashe Moore, 2016 WL 1043121, at *7; Williams, 977 S.W.2d at 106. Therefore, plain error relief is not necessary to do substantial justice.

### Errors in Charge and Verdict Form Instructions for Count 6

Both Defendants argue that the trial court erred in its instructions to the jury regarding the elements of unlawful employment of a firearm during the commission of or attempt to commit a dangerous felony and in its instructions regarding the verdict form for that offense. The Defendants assert that the jury instructions did not specify attempted second degree murder as the predicate dangerous felony and, therefore, the jury could have convicted the Defendants of the offense in Count 6 even if they found that the Defendants committed "any dangerous offense whatsoever, even an offense not charged in the indictment." They further argue that the wording of the instructions for the verdict form allowed the jury to convict the Defendants in Count 6 "for no other reason than the previous finding of guilt on the qualifying dangerous felony." The State argues that, when the instructions on the elements of the offense and the instructions for the verdict form are read in concert, the trial court clearly identified attempted second degree murder as the underlying felony. Further, the State contends that the instruction clearly informs the jury that they must find the Defendants guilty of both the underlying predicate offense and the elements of employing a firearm during the commission of that offense to convict them in Count 6.

When defining the elements of the offense in Count 6, the trial court gave the following instruction:

- 24 -

Unlawful employment of a firearm during the commission of or attempt to commit a dangerous offense[:] Any person who employs a firearm during the commission of or attempt to commit a dangerous felony is guilty of a crime. For you to find the defendant guilty of this offense, the [S]tate must have proven beyond a reasonable doubt the existence of the following essential elements[:]

Number one, that the defendant employed a firearm.

Number two, that the employment was during the commission of or attempt to commit a dangerous felony.

Number three, that the defendant acted either intentionally, knowingly, or recklessly.

The trial court did not specify which dangerous felony applied to Count 6 when defining the elements of the offense. However, the applicable predicate felony was identified in the instructions for the verdict form in Count 6. The trial court's instructions regarding the verdict form read as follows:

Members of the Jury, only if you have convicted [Defendant Henderson or Defendant Dickerson] under Count Two of the indictment of the offense of Criminal Attempt Murder Second Degree or the lesser included offense of Criminal Attempt Voluntary [Manslaughter], shall you consider his guilt in Count Six of the indictment.

It will now be your duty to determine whether or not the defendant is guilty of Employing a Firearm During the Commission of a Dangerous [Felony].

If you find the defendant or [sic] guilty of Criminal Attempt Murder Second Degree or Criminal Attempt Voluntary Manslaughter, beyond a reasonable doubt, your verdict should be,

"We, the Jury, find the defendant [Antonio Henderson or Marvin Dickerson] guilty of Employing a Firearm During the Commission of a Dangerous Felony to wit: _____ (Insert in said space, one of the above named offenses.)

If you have reasonable doubt of the defendant's guilt of this offense, it is your duty to acquit him, and your verdict should be,

- 25 -

"We the Jury, find the defendant [Antonio Henderson or Marvin Dickerson] not guilty."

You will write your verdict on the outside of the jacket and sign one of your names to the verdict as foreperson.

"[T]he trial court has a duty to provide a 'complete charge of the law applicable to the facts of the case.'" State v. James, 315 S.W.3d 440, 446 (Tenn. 2010) (quoting State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986)). However, jury instructions must be reviewed in their entirety, and phrases may not be examined in isolation. State v. Rimmer, 250 S.W.3d 12, 31 (Tenn. 2008). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Majors, 318 S.W.3d 850, 864-65 (Tenn. 2008) (quoting State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005)) (internal quotation marks omitted). As noted by our supreme court:

> [J]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

Rimmer, 250 S.W.3d at 31 (quoting State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997)). To determine whether a defendant is harmed by an ambiguous instruction, "we must consider 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Rimmer, 250 S.W.3d at 31 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). To make that determination, the "significant question" is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Id. (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). Whether jury instructions are sufficient is a question of law, which we review de novo with no presumption of correctness. State v. Clark, 452 S.W.3d 268, 295 (Tenn. 2014).

In this case, the Defendants correctly note that the jury instructions as to the elements of Count 6 did not define the applicable predicate dangerous felony. However, in its instructions as to the verdict form, the trial court clearly stated that the predicate dangerous felony for Count 6 was attempted second degree murder (or the lesser included offense of attempted voluntary manslaughter). Further, the instructions for the verdict form stated that the jury could only consider Count 6 if they had already convicted the Defendant in Count 2 of attempted second degree murder or the lesser included offense of attempted voluntary manslaughter. As such, when viewed in their entirety, the

- 26 -

applicable predicate felony was clearly identified for the jury, and the instructions did not mislead the jury as to applicable law.  See Majors, 318 S.W.3d 864-65.

Turning to the instructions for the verdict form in Count 6, the Defendants also correctly note that those instructions said,

> If you find the defendant guilty of Criminal Attempt Murder Second Degree or Criminal Attempt Voluntary Manslaughter, beyond a reasonable doubt, your verdict should be,

> "We, the Jury, find the defendant [Marvin Dickerson or Antonio Henderson] guilty of Employing a Firearm During the Commission of a Dangerous Felony to wit: [Insert the applicable predicate felony.]"

However, we conclude that the instructions for the verdict form for Count 6, when read in context of the entire jury instructions, fairly submitted the legal issues and did not mislead the jury as to the applicable law.  See id.  In the sentence immediately preceding the above quoted instruction, the instructions clearly stated that, after the jury had convicted the Defendants of one of the applicable predicate offenses in Count 2, the jury then "had to determine whether or not the [Defendants are] guilty of Employing a Firearm During the Commission of a Dangerous [Felony]."  Our courts acknowledge that jurors do not read instructions in the same way a lawyer might but instead apply "commonsense understanding of the instructions[.]"  Rimmer, 250 S.W.3d at 31.  The instructions for the verdict form in Count 6 told the jury that they had to determine the Defendants' guilt of the offense of employing a firearm during the commission of a dangerous felony, and the elements of that offense were set out earlier in the instructions.  Reading the instructions for the verdict form in conjunction with the instructions defining the elements of the offense in Count 6, we believe that the jury was aware it had to consider the elements of Count 6 and that the wording of the verdict form instructions did not "by itself so infect[] the entire trial that the resulting conviction violates due process."  See Rimmer, 250 S.W.3d at 31 (internal quotation marks omitted).  The Defendants are not entitled to relief on this issue.

Although we conclude that the jury instructions for Count 6 did not result in a denial of due process in this case, we acknowledge that the language used by the trial court was not particularly helpful.  As such, we encourage trial courts to use the Tennessee pattern instructions, which for this offense provided an instruction to the trial court to "(list an offense in T.C.A. § 39-17-1324(i)(1) – see Comment Two)."  7 Tenn. Prac. Pattern Jury Instr. T.P.I. Crim.-36.06(c).

## State's Objection in Closing Arguments

Defendant Henderson argues that the trial court erred when it sustained the State's objection to Defendant Henderson's closing argument that the evidence did not support a conviction of especially aggravated robbery because Mr. Reed's serious bodily injury occurred after his property had been taken. Defendant Henderson asserts that his argument was proper because the jury could have acquitted him of especially aggravated robbery due to the fact that Mr. Reed's injuries were sustained after the taking was complete. The State argues that the trial court properly advised the jury to follow the jury instructions and that it did not abuse its discretion in advising Defendant Henderson's counsel to move forward with the closing argument.

The following exchange occurred during Defendant Henderson's closing argument:

> [DEFENDANT HENDERSON'S COUNSEL:] . . . If you conclude that something was taken [from Mr. Reed], well then, surely that happened, the taking happened before [Mr. Reed] tussled and fought with one or both of [the Defendants]. If anything was taken from [Mr. Reed], that happened before [Mr. Reed] was shot. If anything was taken from [Mr. Reed] that happened before [Mr. Reed] was injured by the gunshots. And so if there was a robbery, if something was taken, [Mr. Reed] wasn't injured, there's not serious bodily injury that occurred during the course of an aggravated robbery.
>
> [THE STATE]: You Honor, may we approach?
>
> THE COURT: Yes.

During the subsequent bench conference, the State argued that Defendant Henderson's argument was a mischaracterization of the law. Defendant Henderson's counsel argued that State v. Swift, 308 S.W.3d 827 (Tenn. 2010), stood for the proposition that serious bodily injury had to be contemporaneous to or precede the taking in order to constitute especially aggravated robbery. The trial court stated, "Well, I think the case law is clear in this situation it is especially aggravated robbery." The trial court then told Defendant Henderson's counsel to "stop that line of argument." Before resuming closing arguments, the trial court told the jury, "Ladies and gentlemen, the law is set out in the jury charge and you are to follow that."

Tennessee courts have long recognized that closing arguments are "a valuable privilege that should not be unduly restricted." Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001); see also State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978); Smith v. State, 527

S.W.2d 737, 739 (Tenn. 1975). The trial court has significant discretion in controlling closing arguments, and the trial court's ruling will only be reversed upon a showing of abuse of discretion. Terry, 46 S.W.3d at 156.

"It is settled law in this state that 'the courts are the proper source from which [the jury is] to get the law.'" State v. David Ivy, No. W2003-00786-CCA-R3-DD, 2004 WL 3021146, at *20 (Tenn. Crim. App. Dec. 30, 2004) (quoting Dale v. State, 18 Tenn. 551, 555 (1837)), aff'd, 188 S.W.3d 132, 158-59 (Tenn. 2006). The trial court, not counsel, instructs and advises the jury as to matters of law. Id. In this case, Defendant Henderson's argument to the jury that the serious bodily injury suffered by the victim must precede or be contemporaneous with the taking of property was not a correct statement of the holding in Swift. Based on our review of the record, the trial court did not abuse its discretion when it told Defendant Henderson's counsel to "stop that line of argument" and instructed the jury that they were to follow the law as set out in the jury instructions. Defendant Henderson is not entitled to relief on this issue.

## Partial Consecutive Sentencing

Defendant Henderson argues that the trial court erred when it ordered him to serve partially consecutive sentences. He contends that the trial court's decision was based solely on a finding that Defendant Henderson was a dangerous offender but that the trial court failed to address the factors set forth in State v. Wilkerson, 905 S.W.2d 922 (Tenn. 1995). The State argues that the trial court considered the Wilkerson factors and that it did not abuse its discretion in ordering partially consecutive sentences.

At the sentencing hearing, Defendant Henderson submitted eleven letters from members of his family and his acquaintances detailing his helpful nature and his importance to the people close to him. Defendant Henderson also submitted a certificate of completion for a domestic violence program and a checklist showing his progress in the "moral recognition therapy" program, both of which he attended while in jail. Additionally, Defendant Henderson read an allocution into the record, wherein he apologized to the victims and his family. The trial court found that two enhancement factors applied to Defendant Henderson and gave Defendant Henderson "some credit" for the classes he completed while incarcerated.

The trial court imposed the following sentences for Defendant Henderson:

| Count | Conviction | Victim | Sentence |
|-------|-----------|--------|----------|
| 1 | Especially Aggravated Robbery | Shabaka Reed | 24 years |

| 2 | Attempted Second Degree Murder | Shabaka Reed | 10 years |
|---|---|---|---|
| 3 | Attempted Aggravated Robbery | Nick Cannon | 4 years |
| 4 | Attempted Aggravated Robbery | Tiffany Fleming | 4 years |
| 5 | Aggravated Assault | Tiffany Fleming | 4 years (merged with Count 4) |
| 6 | Employing a Firearm During the Commission of or Attempt to Commit a Dangerous Felony | N/A | 7 years |

The trial court ordered that the sentences in Counts 1, 2, and 6 would run consecutively to each other and concurrently with the remaining counts, for an effective forty-one-year sentence. The trial court noted that Count 6 was a mandatory consecutive sentence to Count 2. See Tenn. Code Ann. § 39-17-1324(e)(1) (2014). However, there are no oral or written findings indicating the basis for which the trial court ordered Defendant Henderson's sentence in Count 1 to run consecutively to his sentences in Counts 2 and 6. Further, there is no mention of the factors set forth in State v. Wilkerson with regard to Defendant Henderson.[5]

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). "[A] trial

---

[5] The trial court sentenced Defendant Dickerson immediately before it imposed a sentence for Defendant Henderson. When ordering partially consecutive sentences for Defendant Dickerson's convictions, the trial court found that Defendant Dickerson was a dangerous offender whose behavior indicated little or no regard to human life and had no hesitation about committing a crime in which the risk to human life was high. Additionally, the trial court found that the circumstances of the offense were aggravated, that confinement was necessary to an extended period of time to protect society from Defendant Dickerson's "unwillingness to lead a productive life" and that the aggregate length of the sentences was reasonably related to the offenses for which Defendant Dickerson was convicted. The trial court entered written findings of the same.

court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing determination." Id. at 709. Moreover, under those circumstances, this court may not disturb the sentence even if it had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2010).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2010); Bise, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." Bise, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401(e) (2010), Sentencing Comm'n Cmts.

The Tennessee Supreme Court has expanded the standard of review in Bise to trial courts' decisions regarding consecutive sentencing. State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. at 862 (citing Tenn. R. Crim. P. 32(c)(1); Bise, 380 S.W.3d at 705). However, when the trial court "fails to provide adequate reasons on the record for imposing consecutive sentences, the appellate court should neither presume that the consecutive sentences are reasonable nor defer to the trial court's exercise of its discretionary authority." Pollard, 432 S.W.3d at 863-64. In such situations, this court may "(1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences." Id. at 864 (citing Bise, 380 S.W.3d at 705 & n.41).

Tennessee Code Annotated section 40-35-115 sets forth seven different situations in which a trial court may impose consecutive sentencing, including when "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4); see Wilkerson, 905 S.W.2d at 936. Before a trial court may impose consecutive sentences on the basis that a defendant is a dangerous offender, the trial court must also find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." Wilkerson, 905 S.W.2d at 939. In order to limit the use of the "dangerous offender" category to cases where it is warranted, our supreme court has stated that the trial court must make specific findings about "particular facts" which show that the Wilkerson factors apply to the defendant. State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999).

In this case, the trial court did not state on the record the basis for which it imposed partially consecutive sentences on Defendant Henderson. Further, even if we were to assume that the trial court imposed partially consecutive sentences on the basis that Defendant Henderson was "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[,]" see Tenn. Code Ann. § 40-35-115(b)(4), the trial court made no mention of the requisite factors set forth in Wilkerson when imposing Defendant Henderson's sentence. Moreover, there is no indication in the written sentencing findings as to which factors the trial court relied upon when imposing Defendant Henderson's partially consecutive sentences. While the trial court did note that "the same enhancing factors and mitigating factors pretty much apply to [Defendant] Henderson as apply to [Defendant] Dickerson[,]" the trial court did not apply its findings underlying Defendant Dickerson's partially consecutive sentences to Defendant Henderson. In short, the trial court made no factual findings regarding Defendant Henderson's partially consecutive sentences on which we can base a review. Therefore, we may apply a de novo standard of review or remand the case to the trial court to reconsider sentencing. See Pollard, 432 S.W.3d at 864.

In cases where the trial court fails to place on the record any reason for a particular sentence, the more appropriate action is to remand the case to the trial court for reconsideration. Bise, 380 S.W.3d at 705 & n.41; see also Pollard, 432 S.W.3d at 864 (remanding the case is the better course for consideration of fact-intensive inquiry about Wilkerson factors). Therefore, we reverse the trial court's order that Defendant Henderson's sentence in Count 1 runs consecutively to his sentences in Counts 2 and 6 and remand the case for reconsideration on the issue of consecutive sentences. However, nothing in this opinion shall be interpreted to reverse the trial court's imposition of consecutive sentences for Counts 2 and 6. See Tenn. Code Ann. § 39-17-1324(e)(1)

- 32 -

(stating that a sentence for unlawful employment of a firearm during the commission or attempt to commit a dangerous felony must be served consecutive to the sentence for the underlying dangerous felony.)

## III. CONCLUSION

For the aforementioned reasons, the trial court's order that Defendant Henderson serve his sentence in Count 1 consecutively to his sentences in Counts 2 and 6 is reversed and remanded for reconsideration of the requisite factors for imposing consecutive sentences.  The judgments of the trial court are affirmed in all other respects.

_____
ROBERT L. HOLLOWAY, JR., JUDGE